<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

VALERIE MONTONE,

   Plaintiff,

v.

CITY OF JERSEY CITY et al.,

   Defendants.

---

Civil Action No. 06-280 (SRC) (MAS)

**OPINION**

**<u>CHESLER</u>, U.S.D.J.**

  This matter comes before the Court on two motions for summary judgment, pursuant to Federal Rule of Civil Procedure 56: 1) by Defendant Robert Troy ("Troy"); and 2) by Defendants City of Jersey City, Jersey City Police Department, and Mayor Jerramiah Healy (collectively, "Jersey City").  For the reasons stated below, the motions will be granted in part, and the case will be remanded to the Superior Court of New Jersey.

**BACKGROUND**

  In brief, this case arises from a dispute over employment discrimination.  The Complaint alleges that Plaintiff Valerie Montone has been a sergeant in the Jersey City Police Department since June of 1996.  She alleges various injuries in connection with her employment.  On December 13, 2005, Plaintiff filed a Complaint in the Superior Court of New Jersey asserting ten counts: 1) gender discrimination in employment, in violation of the New Jersey Law Against Discrimination ("NJLAD"); 2) retaliation in employment, in violation of the NJLAD; 3) retaliation for protected conduct, in violation of the New Jersey Conscientious Employee Protection Act; 4) retaliation for speech protected by the First Amendment, in violation of 42

U.S.C. § 1983; 5) retaliation for political affiliation protected by the First Amendment, in violation of 42 U.S.C. § 1983; 6) disparate treatment in violation of the Equal Protection clause of the Fourteenth Amendment, in violation of 42 U.S.C. § 1983; 7) retaliation for speech protected by the New Jersey Constitution and New Jersey Civil Rights Act; 8) retaliation for political affiliation protected by the New Jersey Constitution and New Jersey Civil Rights Act; 9) sexual harassment, in violation of the NJLAD; and 10) intentional infliction of emotional distress.  Defendants then removed the action to this Court.  Defendants have now moved for summary judgment.

## ANALYSIS

### I. Relevant legal standard

#### A. Motions for summary judgment

Summary judgment is appropriate under FED. R. CIV. P. 56(a) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'"  Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

"When the moving party has the burden of proof at trial, that party must show

2

affirmatively the absence of a genuine issue of material fact: it must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." In re Bressman, 327 F.3d 229, 238 (3d Cir. 2003) (quoting United States v. Four Parcels of Real Property, 941 F.2d 1428, 1438 (11th Cir. 1991)). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325.

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. Jersey Cent. Power & Light Co. v. Lacey Township, 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. Anderson, 477 U.S. at 248; Siegel Transfer, Inc. v. Carrier Express, Inc., 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990). "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial." Gleason v. Norwest Mortg., Inc., 243 F.3d 130, 138 (3d Cir. 2001).

If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts

immaterial." Katz v. Aetna Cas. & Sur. Co., 972 F.2d 53, 55 (3d Cir. 1992) (quoting Celotex, 477 U.S. at 322-23).

**II.     The motions for summary judgment**

Central to Plaintiff's case is the allegation that Defendants failed to promote Plaintiff to the rank of Police Lieutenant from the 2003-2006 list. Plaintiff contends that Defendants' decision not to promote her was based on improper motives and constitutes illegal discrimination. Defendants respond that the decision not to promote her was part of a decision to change the structure of the Police Department, and that, due to this restructuring, no one was promoted to Lieutenant from the 2003-2006 list during Robert Troy's tenure as Police Chief. It is an undisputed fact that no one was promoted to Lieutenant while Troy was Chief. Plaintiff alleges that the decision to promote no one, and the entire restructuring, was a pretext to hide the true basis for the employment decisions, which was to deny her a promotion based on improper motives.

   A.     Count Five: retaliation for political affiliation

The parties agree on the legal requirements for Plaintiff's claim for political affiliation retaliation. To make out a *prima facie* case for retaliation for political affiliation, a plaintiff:

> must show that (1) she was employed at a public agency in a position that does not require political affiliation, (2) she was engaged in constitutionally protected conduct, and (3) this conduct was a substantial or motivating factor in the government's employment decision.

Galli v. N.J. Meadowlands Comm'n, 490 F.3d 265, 271 (3d Cir. 2007). In Galli, the Third Circuit further recognized two component elements for the third prong: knowledge by the decisionmaker of the protected conduct, and causation. Id. at 275-276.

Defendants move for summary judgment on the this claim, contending that Plaintiff has

no evidence from which a reasonable jury could find in her favor as to the third element. The summary judgment burden then shifts to Plaintiff.

Plaintiff contends that her political affiliation retaliation claim is predicated on the protected conduct of refusing to assist Jerremiah Healy in his election bid in 1997, and her assisting Lou Manzo in his election bid in 2004. Defendants have not disputed these basic facts.

In briefing her opposition to Defendants' motions for summary judgment, Plaintiff has submitted a L. Civ. R. 56.1 Statement of Material Facts ("PSOMF") with 700 numbered statements. The section of Plantiff's opposition brief which deals with the political retaliation claim refers to approximately 278 of these statements. Of these, this Court finds that a large number are not probative of the proposition that Plaintiff's political affiliation was a motivating factor in the decision not to promote her – the "motivating factor" element.

The largest number of statements – about 138 – concern the organizational structure of the Police Department and Troy's reorganization plan. (PSOMF ¶¶ 404-541.) One of Plaintiff's main points is that the evidence shows that promotions to Lieutenant were needed during Troy's tenure as Chief. This Court finds that this evidence is not relevant to proving the motivating factor element.[1] Rather, it appears that Plaintiff has approached this claim as if the McDonnell-Douglas analysis applies: this evidence might be useful to show that the employer's proffered

---

[1] Plaintiff's opposition brief sometimes muddles the key issue. For example, Plaintiff argues that "[t]here is abundant evidence that the reorganization was improperly motivated." (Pl.'s Opp. Br. 16.) This argument confuses the issues. The issue before this Court on this motion is whether Plaintiff's protected conduct was a substantial or motivating factor in the government's employment decision. The decision to reorganize the department is distinctly different and is not presently at issue. Even if Plaintiff persuaded a trier of fact that the reorganization of the department was a sham designed solely to block Plaintiff's promotion to Lieutenant, this still says nothing about whether Plaintiff's protected conduct was a substantial or motivating factor in the government's decision not to promote her.

5

explanation is unworthy of credence, and Plaintiff does indeed argue that this evidence shows that Defendants' explanation for the reorganization plan is pretextual. Plaintiff's political retaliation claims are not, however, decided by applying McDonnell-Douglas. Rather, Plaintiff bears the burden of proving that political retaliation was a motivating factor, and this evidence does not show this. Plaintiff's pretext argument is not relevant to the motivating factor element under Galli.

The five statements regarding Jersey City's not having an ordinance setting forth the type and number of police positions, nor written criteria for making promotions, have no relevance to the motivating factor element. (PSOMF ¶¶ 118-122.)

The second largest number of statements (74) concern alleged misconduct by various people in Jersey City government. (PSOMF ¶¶ 618-691.) None of this evidence is relevant to the motivating factor element. The allegations of misconduct by Mayor Healy (the "Bradley Beach Incident") are irrelevant, as they concern neither Montone nor retaliation for political conduct. (PSOMF ¶¶ 618-624.) The evidence that political considerations have played a role in decisions to award jobs or promotions to others in past administrations in Jersey City is also irrelevant.[2] Evidence that, during Mayor Healy's administration, other people have gotten jobs or

---

[2] Such evidence is likely to be inadmissible as it is not probative as to whether protected conduct motivated the decision not to promote Plaintiff. Plaintiff cites Whittaker v. Fayette County, 65 Fed. Appx. 387, 392 (3d Cir. 2003), as support for the proposition that such testimony would be admissible. Whittaker involved an exceptional circumstance in which there was a remarkable set of similarities between the incident at issue and the other incident about which evidence was offered: the plaintiff and the third person held the same position, were fired by the same defendant on the same day, were both replaced by the defendant's campaign supporters, and the defendant admitted that he based both firing decisions on "politics." Id. The Third Circuit found the evidence admissible to show the defendant's motivation to discriminate on political grounds. Id. In contrast, Plaintiff here seeks to introduce evidence as to "Jersey City's longstanding pattern of political affiliation retaliation." (Pl.'s Opp. Br. 8.) At a minimum, unless such evidence concerns the person who made the decision not to promote Plaintiff, it is

promotions in Jersey City for political reasons may have some minimal probative value as background, but it is clearly insufficient by itself to support an inference that Plaintiff was retaliated against. Significantly, Plaintiff points to no evidence that others were demoted or denied promotion during the Healy administration because of their support for Mayor Healy's opponents.

Plaintiff offers evidence of other politically-motivated decisions during the Healy administration, but this is generally problematic because it is a grab-bag that conflates a variety of situations, some of which involve personal relationships and perhaps nepotism or cronyism, some of which do not concern employment at all, and some of which suggest diverse kinds of political influence. As stated, most significant is the fact that Plaintiff does not provide evidence that anyone else was demoted or denied promotion during the Healy administration on the basis of political affiliation.

It is worth noting that, of the 74 statements about political dynamics in Jersey City government, only two concern an allegation of political retaliation. (PSOMF ¶¶ 664-665.) Of those two, one concerns a previous administration and is of no relevance to this case (¶ 664); as to the other, which alleges political retaliation by Mayor Healy, the underlying evidence is purely conclusory and inadmissible inasmuch as the testimony provides no factual basis for the retaliation accusation. (Manshel Aff. Ex. I at 175:4-175:18.)

Plaintiff contends that her evidence shows that Mayor Healy told Troy that he would

---

not probative of Healy's or Troy's motives. Plaintiff has not argued that she has evidence of retaliation in strikingly similar circumstances, as was the case in Whittaker. This Court finds all of the offered evidence of the political patronage dynamics in Jersey City government, outside of the Healy administration, to be inadmissible because it is not probative of the specific intent at issue.

promote Plaintiff. Plaintiff points to the deposition testimony of Richard DeStefano regarding a conversation he had with Troy when Troy was Acting Chief:[3]

> Q: And tell me when you approached him everything that was said.
>
> A: I walked up to him. I said, "Chief, can I ask you a question?" He said, "Sure. Do you want to go to the West?" I said, "No, I'm pretty happy where I am, thank you."
>
> He said to me, "You're okay with us. You didn't try to hurt us." I said, "I appreciate that. What's the chance of me getting promoted? I'm sitting Number Eleven on the list." I know there's only sixteen of us, Wally Wolfe being number sixteen.
>
> He then said, "Wally, I thought Valerie was sixteen." She moved up to Number Five after they made the ten promotions in October. He then said, "So are you in front of her or behind her?" I said, "I'm behind her." He said, "I'm sorry, you will not be promoted. They will not promote her. The Mayor will not promote her."

(Manshel Aff. Ex. G at 77:19-78:12.) At the most, this evidence shows only that Mayor Healy had decided that Plaintiff would not be promoted, and that others would not be promoted because of that decision. This evidence says nothing about what might have motivated Mayor Healy to make that decision.

Plaintiff points as well to evidence of a similar Troy statement in the deposition testimony of John Whalen, regarding a conversation he had with Troy:

> Q: When you met with the Chief that day, tell me as best you can recall what was discussed during this meeting.
>
> A: Okay. I walked into the -- I had to wait outside for a couple minutes, outside the one office. . . And we went into his office. And he started telling me that he wanted to give me an assignment.

---

[3] Defendants contend that this evidence, and Plaintiff's similar evidence, is inadmissible hearsay. Because this Court concludes that the evidence, even if admitted, fails to raise factual disputes sufficient to defeat the motions for summary judgment, it need not reach the hearsay issues.

8

>   The Megan's Law.
>
> Q:   Okay.
>
> A:   And I -- first thing I said was -- I stepped back; and I says, "Why? I didn't do anything." And he goes, "I know; you didn't hurt us." And I said, "Okay." . . . So we started talking more about the . . . job, the assignment. And then I -- it got to a point where I asked him about promotions. And I says, "Chief; what about promotions?" And he said, "Well, I'm not making promotions." He said, "I'm not promoting her." And he says, "In fact, I seen Richie the other day." And he says, "I said the same thing to him, and I shouldn't have. But I wanted to be honest with hirn." And then I said, "Chief, that's not fair." He goes, "Well, how would you feel if your best friend's wife is sitting at the kitchen table crying over threats made by her against her son and nephew?"

(Manshel Aff. Ex. GG at 47:3-48:19.) Plaintiff makes much of the testimony from these two witnesses that Troy said that the witnesses had not "hurt us." One difficulty for Plaintiff is that there is no evidence that these conversations concern political affiliation or protected conduct. The DeStefano testimony contains no clues about what Troy meant by, "you didn't try to hurt us." No reasonable trier of fact could infer from the DeStefano testimony that Troy was speaking about political affiliation or protected conduct.

The Whalen testimony, on the other hand, works against Plaintiff's claim. While the DeStefano testimony contains no clues about what Troy meant by "hurt us," the Whalen testimony explains the phrase, and it does not appear to refer to political affiliation or protected conduct. Rather, the testimony suggests that the conduct that "hurt" someone was Plaintiff's making threats against someone's son and nephew, which upset that person's wife. Thus, the Whalen testimony tends to suggest that the decision not to promote Plaintiff was based on personal animus, not retaliation for political affiliation or activities or other protected conduct.

This inference is supported by another piece of evidence offered by Plaintiff, the

9

certification of Ezio Scerbo, which describes a conversation he had with Troy: "Acting Chief Troy also suggested that Valerie Montone would not be promoted because the mayor's wife was under the impression that Valerie had threatened the mayor's son by saying something like, I can't wait til his son gets on this job." (Manshel Aff. Ex. 30 ¶ 7.) (Presumably, this statement refers to the son becoming a police officer.)[4] The bottom line, however, is that the "you didn't hurt us" evidence does not raise any factual dispute about the motivating factor element.

The third largest number of statements (41) concern the allegation that an Internal Affairs investigation of allegations that Plaintiff was sleeping on the job was retaliatory. (PSOMF ¶¶ 314-355.) Not one of these statements has any relevance to the motivating factor element, as there is no suggestion that political conduct was involved.[5]

Plaintiff argues that the evidence that Defendants spread disparaging rumors about Plaintiff during election season demonstrates a politically retaliatory motive. There are two difficulties with this argument. First, Plaintiff has not pointed out evidence which establishes the temporal link she relies upon – i.e., that rumors were spread during election season. The factual statements cited in support make no reference to when rumors were spread. Second, and more importantly, there is nothing in the evidence about the spreading of disparaging rumors that is relevant to the motivating factor element. This evidence may go to the antagonism that may have

---

[4] While both Troy and Mayor Healy denied that there was any truth to this story, the focus at this juncture is Plaintiff's proofs, and Plaintiff's proofs do not prove her claim. (Manshel Aff. Ex. J at 95:19-96:5; Ex. BB at 146:25-147:4.)

[5] Moreover, in reply, Troy observes that the entire sleeping episode did not begin until 2007, and Troy retired in 2006 – a fact which Plaintiff admits. Plaintiff's opposition brief is so diffuse on this matter that it presents no coherent scenario of who is alleged to have been retaliating against Plaintiff in the sleeping episode. Plaintiff calls it retaliation, but identifies no retaliator. Since Troy had retired, who was it? Before one can prove that a decision was improperly motivated, the person who made the decision must be identified.

been directed toward Plaintiff, but not to there being a politically retaliatory motive for that antagonism.

Plaintiff offers other evidence which supports the inference that Troy bore ill will toward Plaintiff (¶¶ 131, 200, 204), that Troy refused to promote her (¶ 131), and that others on the list would be denied promotion because Troy refused to promote Plaintiff (¶¶ 136, 145, 146).

Examining Plaintiff's evidence as a whole, and making every reasonable inference in favor of Plaintiff, as the nonmovant, a reasonable trier of fact, hearing Plaintiff's evidence, could easily find that Chief Troy bore ill will toward Plaintiff and was determined not to promote her to Lieutenant. Moreover, there is evidence which, if credited by the trier of fact, supports the inference that he bore such ill will toward Plaintiff that he stopped all promotions to Lieutenant during his tenure as Chief, even though this decision may have been a poor one from the perspective of the organizational needs of the Police Department. At best, this constitutes evidence of retaliation. None of this, however, is probative of the motive for the retaliation. Plaintiff has offered no evidence from which a reasonable trier of fact could conclude that Plaintiff's political affiliation or other protected conduct was a substantial motivating factor in the decision not to promote Plaintiff.[6]

Plaintiff has offered no evidence from which a reasonable jury could infer that Plaintiff's protected political activity or affiliation was a substantial or motivating factor in the decision not

---

[6] Moreover, Plaintiff's theory that she was not promoted because she campaigned for Healy opponent Manzo is undercut by her concession that Troy promoted at least one campaign supporter of Healy opponent Manzo, Eddie Gillan. (Manshel Aff. Ex. B at 372:2-6.) It is interesting to note, although it played no role in this Court's determination in this matter, that Plaintiff conceded that one of the reasons that she campaigned for Manzo was that she hoped, were Manzo elected, that she would benefit by receiving a desirable appointment, perhaps as Chief of Police. (Id. at 368:20-370:13.)

to promote Plaintiff. Plaintiff's case here appears to be largely based on evidence that a decision was made not to promote her, and that political considerations have motivated other employment decisions in Jersey City government. Plaintiff lacks any direct evidence that the decision not to promote her was substantially motivated by retaliation for her political affiliation or her protected political conduct, nor has she offered sufficient relevant, probative circumstantial evidence in support of the motivating factor element to send this issue to a jury.

Plaintiff devotes the majority of the discussion of the political retaliation claims to the promotion claim. Plaintiff briefly addresses "the remaining acts of retaliation." (Pl.'s Opp. Br. 20.) In this section, Plaintiff specifically mentions "accelerating plaintiff's removal from the day tour and refusing to grant her hardship request to return to the day tour" and the sleeping on the job episode. (Pl.'s Opp. Br. 20-23.) Plaintiff cites no facts in support of the scheduling claims, and, as discussed above, Plaintiff's evidence provides no support for finding that political affiliation motivated the government's conduct in investigating the sleeping on the job incident. Plaintiff has failed to defeat Defendants' motions for summary judgment as to political affiliation retaliation in conduct outside of the decision not to promote Plaintiff.

Lastly, Plaintiff's opposition brief addresses municipal liability for political affiliation retaliation under Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). Crucially, when listing the improper policies or customs alleged, Plaintiff does not contend that there is a policy of refusing to promote people based on political affiliation. Moreover, this Court having found that Plaintiff has failed to prove any underlying constitutional injury, there cannot be municipal liability: "Absent an underlying constitutional violation by an agent of the municipality, however, the municipality itself may not be held liable under § 1983." Mills v. City of Harrisburg, 350

12

Fed. Appx. 770, 773 n.2 (3d Cir. 2009) (citing Grazier ex rel. White v. City of Philadelphia, 328 F.3d 120, 124 (3d Cir. 2003)).

Plaintiff also contends that she has municipal liability claims pursuant to City of Canton v. Harris, 489 U.S. 378, 388 (1989), which states: "We hold today that the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." Again, Plaintiff has not sufficiently developed a failure to train case. City of Canton sets the bar very high for such a case, where the legal test is whether:

> in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need. In that event, the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury.

Id. at 390. Plaintiff is nowhere close to making such a case.

This Court finds that, for each aspect of Plaintiff's claim for political affiliation retaliation, there is a complete failure of proof as to one or more essential elements of the claim. As to this claim, Plaintiff has failed to defeat Defendants' motions for summary judgment, and the motions for summary judgment will granted in part. As to Count Five, Plaintiff's claim for political affiliation retaliation, pursuant to 42 U.S.C. § 1983, Judgment will be entered in favor of Defendants.

    B.    Count Four: retaliation for exercise of the right to freedom of speech

Defendants move for summary judgment on Count Four on the ground that Plaintiff has no evidence to support a claim for violation of her right to freedom of speech, and that Plaintiff's

13

case for freedom of speech retaliation merely duplicates her case for political affiliation retaliation.  In opposition, Plaintiff begins by stating: "Plaintiff asserts a free speech and/or petition clause retaliation claim under Section 1983."  (Pl.'s Opp. Br. 32.)  In reply, Troy contends that Plaintiff has now added new retaliation claims, based upon the right to petition, to her case.  See San Filippo v. Bongiovanni, 30 F.3d 424, 442 (3d Cir. 1994).

As to the petition clause contentions, Troy is correct.  Count Four in the Complaint is quite clear:

> 91. Sergeant Montone's protected conduct constitutes speech protected by the First Amendment to the United States Constitution as expressions about matters of public concern.
>
> 92. Plaintiff's protected conduct was a substantial factor in defendants' adverse actions against plaintiff.
>
> 93. Defendants acted under color of state law in retaliating against plaintiff for her expression on matters of public concern.
>
> . . .
>
> 96. By and through the above actions, defendants violated 42 U.S.C. § 1983 by acting under color of state law to retaliate against plaintiff for her having engaged in speech protected by the First Amendment . . .
>
> 97. Defendants have engaged in a pattern and practice of free speech retaliation.

(Compl. ¶¶ 91-93.)  Nowhere in Count Four is there any reference to the right to petition the Government for a redress of grievances, nor any reference to retaliation against Plaintiff for conduct alleged to have been protected by the right to petition clause.  Instead, Count Four crisply and clearly states a claim for violation of the right to freedom of speech.

This Court finds that the Complaint contains no claim for a violation of the First Amendment right to petition.  "A plaintiff may not amend his complaint through arguments in

his brief in opposition to a motion for summary judgment." Bell v. City of Philadelphia, 275 Fed. Appx. 157, 160 (3d Cir. Pa. 2008) (quoting Shanahan v. City of Chi., 82 F.3d 776, 781 (7th Cir. 1996)).  There is no claim for violation of the right to petition for redress of grievances in this case, and Plaintiff's arguments of retaliation for exercise of the right to petition fail to defeat Defendants' motions for summary judgment on Count Four.

Count Four states a claim for retaliation for exercise of the right to freedom of speech. When a public employee asserts such a claim, the Supreme Court has set forth the framework for the analysis as follows:

> *Pickering* and the cases decided in its wake identify two inquiries to guide interpretation of the constitutional protections accorded to public employee speech. The first requires determining whether the employee spoke as a citizen on a matter of public concern.  If the answer is no, the employee has no First Amendment cause of action based on his or her employer's reaction to the speech.  If the answer is yes, then the possibility of a First Amendment claim arises. The question becomes whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public.

Garcetti v. Ceballos, 547 U.S. 410, 418 (2006) (citations omitted).

Thus, the first question for the Court is whether Plaintiff has spoken as a citizen on a matter of public concern.  Whether speech is protected under the First Amendment presents a question of law to be determined by the Court.  Baldassare v. State of N.J., 250 F.3d 188, 195 (3d Cir. 2001).  Speech involves a matter of public concern if it can be "fairly considered as relating to any matter of political, social or other concern to the community." Connick v. Myers, 461 U.S. 138, 146 (1983).  Whether the public employee's speech relates to matters of importance to the community, as opposed to those merely of personal interest, presents the threshold issue in a First Amendment retaliation claim.

15

In moving for summary judgment on Count Four, Defendants argue that Plaintiff has no evidence to support that claim. Defendant is correct.

Plaintiff gives very brief treatment to this claim. Plaintiff's brief, in fact, only states some case law and otherwise refers the reader to the sections of her brief on the retaliation claim under the NJLAD. At the outset, the Court notes that the NJLAD sections contain no discussion of the elements of a federal constitutional free speech claim. Strikingly, although Count Four in the Complaint carefully asserts that Plaintiff spoke on matters of public concern, Plaintiff's brief neither precisely identifies the speech that she contends was on matters of public concern, nor makes any case at all that such speech was on matters of public concern. In fact, the free speech sections of Plaintiff's opposition brief contain no mention whatever of the issue of whether Plaintiff spoke on matters of public concern.

The NJLAD retaliation section of Plaintiff's opposition brief does, however, generally point to six situations which form the basis of her claim: 1) Plaintiff's first sexual harassment lawsuit; 2) Plaintiff's refusal to pay Troy money from the settlement of her first lawsuit; 3) Plaintiff complained about sexual harassment by James Carter; 4) Plaintiff escalated a sexual harassment claim made by Marisa Johnston; 5) Plaintiff made pre-suit complaints about sexual harassment including a Notice of Tort Claims; and 6) Plaintiff filed the instant lawsuit. (Pl.'s Opp. Br. 26.)

At the outset, the Court observes that, of these six items, items 1, 3, 5 and 6 appear to implicate a right to petition claim – not a free speech claim. Item 2 does not appear to implicate either a right to petition or a free speech claim.

Assuming, *arguendo*, that any of these items might form the basis for a free speech claim,

Plaintiff's brief does not even address the question of whether the speech associated with these situations meets the legal test for being speech on matters of public concern. Based on Plaintiff's brief description in her brief, it appears that, to the extent that these situations involve speech, they generally appear to relate to matters of purely personal interest. While this Court bases its determination on the six one-sentence summaries that Plaintiff has presented in the opposition brief, five of the six situations involve either the right to petition or Plaintiff's speech about her own personal grievances or her refusal of Troy's alleged request for money. Only the speech about the sexual harassment of Marisa Johnston would not concern Plaintiff's personal grievance.

> The Supreme Court has held:
>
> when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior.

Connick, 461 U.S. at 147. See also Bell v. City of Phila., 275 F.App'x 157 (3d Cir. 2008) (affirming summary judgment on free speech retaliation claim, reasoning that plaintiff's complaints not a matter of public concern because they did not seek to expose discriminatory policies at DA's office but complained solely of employee's treatment by superiors); Nittoli v. Morris County Bd. of Chosen Freeholders, No. 05-4007 (JAG), 2007 WL 1521490, at *4 (D.N.J. May 22, 2007) (finding that though plaintiff complained of sexual discrimination, among other things, speech not protected because it concerned separate actions by the public employer involving only the plaintiff rather than pattern of harassment or discrimination). This Court concludes that, with the exception of the speech regarding Marisa Johnston, Plaintiff has

described only speech that appears to be on matters of personal interest, which is not actionable under Connick.

While the speech Plaintiff has described concerning the allegation that Plaintiff "escalated" the complaint of Marisa Johnston could conceivably relate to a matter of public concern, Plaintiff has failed to direct the Court to any evidence supporting this claim. To consider this speech properly, this Court would, of course, need to know precisely what evidence this claim is based on, the timing of Plaintiff's conduct, and to whom the alleged communication was made. Plaintiff's brief, however, offers no citation to the record, nor to Plaintiff's L. Civ. R. 56.1 Statement. This Court is at a loss to further consider this claim, lacking any evidence that indicates that Plaintiff made statements to anyone alleging that people engaged in sexual harassment of Marisa Johnston. The Court is left only with a conclusory assertion in a brief as the sole basis for an assertion of a First Amendment free speech retaliation claim.

Plaintiff has presented no evidence to support the elements of a claim for retaliation based on the exercise of the right to freedom of speech. As to this claim, Plaintiff has failed to defeat Defendants' motions for summary judgment, and the motions for summary judgment will be granted in part. As to Count Four, Plaintiff's claim for retaliation based on Plaintiff's exercise of her First Amendment right to freedom of speech, pursuant to 42 U.S.C. § 1983, Judgment will be entered in favor of Defendants.

This Court has now decided to enter judgment in favor of Defendants on Plaintiff's two First Amendment retaliation claims, Count Four and Count Five, and this leaves no federal question claims active in this case.[7] Only claims under state law will remain. As none of

---

[7] Plaintiff has voluntarily withdrawn Count Six, her equal protection claim. (Pl.'s Opp. Br. 71.) That claim will be therefore be dismissed with prejudice.

Plaintiff's federal claims will remain, this Court exercises its discretion not to retain supplemental jurisdiction over the remaining state law claims.  See 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction . . . [once] the district court has dismissed all claims over which it has original jurisdiction").  The Third Circuit has explained that "once all federal claims have been dropped from a case, the case simply does not belong in federal court."  New Rock Asset Partners, L.P. v. Preferred Entity Advancements, 101 F.3d 1492, 1504 (3d Cir. 1996) (quoting Lovell Mfg. v. Export-Import Bank, 843 F.2d 725, 734 (3d Cir. 1988)). Nor are there any circumstances present which would make the exercise of the Court's discretion to retain supplemental jurisdiction appropriate.  See United Mine Workers v. Gibbs, 383 U.S. 715, 726-27 (1966).

      In the absence of subject matter jurisdiction over this case, this Court cannot rule on the remaining issues raised by Defendants' motions for summary judgment.  This case will be remanded to the Superior Court of New Jersey.

## **CONCLUSIONS**

For the reasons stated above, both motions for summary judgment will be granted in part. As to Counts Four and Five, Defendants have shown that they are entitled to judgment as a matter of law, and Defendants' motion for summary judgment on Counts Four and Five is granted. Judgment is hereby entered in favor of Defendants on Counts Four and Five. Plaintiff has withdrawn Count Six, which is dismissed with prejudice. This leaves no claims under federal law in this case, removing this Court's basis for subject matter jurisdiction. Because this Court lacks subject matter jurisdiction over this case, it is remanded to the Superior Court of New Jersey.

      s/ Stanley R. Chesler
    Stanley R. Chesler, U.S.D.J.

Dated: June 27, 2011