<u>UNITED STATES DISTRICT COURT</u>
<u>FOR THE DISTRICT OF NEW JERSEY</u>

| | |
|---|---|
| VALERIE MONTONE,<br><br>     Plaintiff,<br><br> v.<br><br>CITY OF JERSEY CITY, et al.,<br><br>     Defendants, | Hon. Stanley R. Chesler<br>Civil Action No.: 2:06-cv-280 (SRC/CLW) |
| JOHN ASTRIAB, CLYDE BANKS,<br>JAMES BUCKLEY, WILLIAM<br>CULLINANE, RICHARD<br>DESTEFANO, DAVID LABRUNO,<br>EZIO SCERBO, JOHN WHALEN,<br><br>     Plaintiffs,<br><br> v.<br><br>CITY OF JERSEY CITY, et al.,<br><br>     Defendants. | Hon. Stanley R. Chesler<br>Civil Action No.: 2-06-cv-3790 (SRC)<br><br>**Special Master's Opinion On<br>Motions For Awards Of Attorneys'<br>Fees And Costs** |

**INTRODUCTION**

By order dated July 21, 2020, the undersigned was appointed Special Master in these two matters to resolve two applications for awards of attorneys' fees and costs filed by plaintiffs in the captioned matters.  Montone, ECF No. 401; Astriab, ECF No. 247.

In *Montone v. Jersey City*, two law firms representing the plaintiff, Manshel Law, LLC and Green Savits, LLC, seek an award of fees and costs.  Manshel Law seeks an award of $3,001,811.03 in fees (including enhancement) and $121,642.94 in costs.  Green Savits seeks an

award of $649,901.78 in fees (including enhancement) and $3,134.91 in costs.[1]  In *Astriab v. City of Jersey City*, plaintiffs' counsel, Breuninger & Fellman, seek an award of $1,433,704.71 in fees (including enhancement) and $114,448.41 in costs.  All applications are inclusive of services rendered and costs incurred through the submission of the firms' respective reply submissions on their fee applications.

## BACKGROUND

I.      The Matters

        *A.      Montone v. City of Jersey City, et al.*

This litigation began nearly 15 years ago, when Valerie Montone filed a complaint in the New Jersey Superior Court against the City of Jersey City, the Jersey City Police Department, Mayor Jerramiah Healy, and Police Chief Robert Troy.  The gravamen of Ms. Montone's complaint was that she was wrongfully denied promotion from sergeant to lieutenant and suffered other untoward actions in retaliation for her making complaints about sexual harassment in the police department and for her support of Mayor Healy's political rival.  Ms. Montone's complaint alleged the following ten counts:  1) gender discrimination in violation of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 *et seq*. (LAD); 2) unlawful retaliation for protected conduct under the LAD; 3) unlawful retaliation in violation of the New Jersey Conscientious Employee Protection Act, N.J.S.A. 34:19-1 *et seq*. (CEPA); 4) unlawful retaliation for protected speech in violation of 42 U.S.C. §1983; 5) unlawful retaliation for political affiliation in violation of §1983; 6) unlawful denial of Ms. Montone's equal protection rights in violation of 1983; 7) unlawful retaliation for protected speech in violation of the New Jersey Civil Rights Act, N.J.S.A.

---

[1] This includes a voluntary two-and-a-half hour reduction in the lodestar of the Green Savits firm noted in the firm's reply submission.  *See* Reply Declaration of Jon W. Green in Further Support of Plaintiff Valerie Montone's Motion for Attorney's Fees and Non-taxed Costs.

10:6-1 ("NJCRA"); 8) unlawful retaliation for political affiliation in violation of the NJCRA; 9) hostile work environment in violation of the NJLAD; and 10) intentional infliction of emotional distress.

The Complaint was removed to the District of New Jersey based on federal question subject matter jurisdiction. On October 22, 2010, after years of discovery, the defendants moved for summary judgment. On June 27, 2011, the court granted the motion insofar as it related to the federal causes of action, dismissed those counts, and remanded the remaining state law claims to the Superior Court's Law Division. Ms. Montone appealed the decision to the Third Circuit.

While the appeal to the Third Circuit was pending, the state law claims were litigated in the Law Division, and, on February 3, 2012, summary judgment was granted in favor of the defendants on the remaining state law claims, based on the collateral estoppel effect of the District Court's summary judgment. On March 8, 2013, the Third Circuit reversed and vacated the District Court's summary judgment. And on December 24, 2013, the Superior Court's Appellate Division also reversed and remanded the summary judgment granted by the Law Division.

B.      *Astriab et al v. City of Jersey City et al.*

On August 14, 2006, nearly nine months after Ms. Montone had commenced her lawsuit, eight current or former sergeants in the Jersey City Police Department filed a lawsuit in the District of New Jersey. The claims of the eight *Astriab* plaintiffs were derivative of Ms. Montone's claims. In particular, they alleged that, in order to effectuate their plan to retaliate against Ms. Montone by not promoting her to lieutenant, the defendants refused to promote *anyone* to lieutenant, thus denying the eight *Astriab* plaintiffs of their rightful promotions to lieutenant. The *Astriab* plaintiffs alleged the following claims: 1) gender discrimination in violation of the LAD, 2) unlawful retaliation under the LAD; 3) unlawful retaliation for protected activity in violation of §1983; and 4) denial of equal protection rights in violation of §1983.

3

As it did in *Montone*, on August 16, 2011, the District Court granted summary judgment in favor of the defendants on the two federal causes of action and declined to exercise jurisdiction over the two state law claims and dismissed them without prejudice.  The *Astriab* plaintiffs appealed and the Third Circuit reversed and vacated the summary judgment.

Also as in *Montone*, on remand to the Superior Court's Law Division the court granted summary judgment to the defendants on the remaining state law claims.  That summary judgment was appealed and ultimately reversed by the Appellate Division.

### C.    Consolidated Trial of *Montone* and *Astriab* *Matters*

After the *Montone* and *Astriab* federal matters were remanded to the District Court, the District Court consolidated both matters for trial purposes only.  The Court also granted leave to Ms. Montone to file an Amended Complaint in the District Court, restoring her state law claims to the federal action, and the Court entered an order reasserting supplemental jurisdiction over the *Astriab* plaintiffs' state law claims.

On December 21, 2017, Jon W. Green of Green Savits, entered an appearance on behalf of Ms. Montone to serve as Ms. Montone's trial counsel with Lisa Manshel of Manshel Law continuing to serve as Ms. Montone's counsel, but providing trial support services outside the courtroom.

Jury selection began on April 12, 2018, and a verdict was reached on May 2, 2018.  The jury found that the defendants wrongfully denied Ms. Montone a promotion because of her political affiliations, her engaging in conduct protected by the LAD, and her expressive conduct about a matter of public concern.  The jury no-caused Ms. Montone on her claim of a hostile work environment.  The jury awarded Ms. Montone $276,834.00 in economic damages and $0 in emotional distress damages.  The jury did not award punitive damages.

The jury also found in favor of the Astriab plaintiffs on their retaliatory failure-to-promote claims. The jury awarded each *Astriab* plaintiff economic damages but declined to award any emotional distress or punitive damages. The total amount awarded to the eight *Astriab* plaintiffs was $1,891,608, for an average award of $236,451.

II.     The Fee Applications

    *A.     Manshel Law, LLC*

As mentioned, Manshel Law is seeking an award of $3,001,811.03 in fees and $121,642.94 in costs. Manshel Law arrived at this number by calculating its lodestar and then applying a 55% enhancement on its pre-verdict lodestar. Manshel Law is basing its lodestar on approximately 4,055 hours of attorney time, all of which was performed by attorney Lisa Manshel, Esq. It should be noted that in calculating its lodestar, Manshel Law did not include time for various types of services that it rendered during the course of the litigation. In particular, because Ms. Montone did not prevail on her hostile-work-environment, CEPA, equal-protection, and gender-discrimination claims or on her claims for emotional-distress and punitive damages, Manshel Law did not include 524 hours of time that it devoted solely to those claims.

Manshel Law then multiplied the number of hours for which it is seeking compensation by Attorney Manshel's hourly rate of $500/hr. The reasonableness of Manshel Law's hourly rate was supported by sworn statements from six different attorneys. Multiplying the hours spent by a rate of $500 per hour yields a lodestar of $2,027,624.49.

As mentioned, Manshel Law seeks an enhancement of its lodestar to account for the risk it undertook in prosecuting the case. In particular, Manshel Law seeks a 55% enhancement for the time it devoted on the matter until a verdict was rendered on May 2, 2018. Manshel Law devoted approximately 3542.5 hours until that time, resulting in a pre-verdict lodestar of $1,771,248.25.

2853384.1 116597-103871

Fifty-five per cent of that amount is $974,186.54, which when added to the overall lodestar results in Manshel Law's total fee request of $3,001,811.03.

In addition, as mentioned, Manshel Law is seeking reimbursement of costs in the amount of $121,642.94

      B.     *Green Savits, LLC*

The Green Savits appeared for Ms. Montone on the eve of trial and served as Ms. Montone's trial counsel. As mentioned, the firm seeks an award of $649,901.78 in fees (including enhancement) and $3,134.91 in costs. Green Savits's fee request is based on the work of three of its attorneys: Jon Green, Glen Savits, and Laura LoGiudice. As Manshel law did, the Green Savits did not include time for services rendered solely in support of unsuccessful claims. The firm's lodestar for the entire case through the submission of its reply in support of its fee award is $476,412.80, calculated follows:

| Attorney | Hours | Rate/Hour | Fee |
|---|---|---|---|
| Green | 742.08 | $530 | $393,300.55 |
| Savits | .6 | $530 | $318.00 |
| LoGiudice | 215.05 | $385 | $82,794.25 |
| | | **Total** | **$476,412.80** |

The Green Savits firm also seeks an enhancement of 50% on its pre-verdict lodestar. Attorneys Green and LoGiudice devoted 503.69 and 207.85 hours, respectively, to Ms. Montone's case before a verdict was announced, yielding a pre-verdict lodestar of $346,977.95. Fifty per cent of the pre-verdict lodestar is $173,488.98, resulting in a total fee award of $649,901.78.

      C.     *Breuninger & Fellman*

6

Counsel for the *Astriab* plaintiffs, Breuninger & Fellman, are seeking an award of $1,433,704.71 in fees (including enhancement) and $97,001.37 in costs. The fee award is based on a lodestar of $1,094,271.80 plus a 35% enhancement for pre-verdict.

Five Breuninger & Fellman worked on the matter. The firm's lodestar was calculated as follows:

| Attorney | Hours | Rate/Hour | Fee |
|---|---|---|---|
| Breuninger | 276 | $525 | $144,900.00 |
| Fellman | 736.15 | $500 | $368,075.00 |
| Nugent | 338.3 | $385 | $130,245.50 |
| Ramalho | 1029.18 | $385 | $396,234.30 |
| Chow | 121.6 | $250 | $30,400.00 |
| Chow (performing paralegal services) | 162.78 | $150 | $24,417.00 |
| | | **Total** | **$1,094,271.80** |

Breuninger & Fellman seek a 35% enhancement of its pre-verdict lodestar, which it represents is $969,808.30, resulting in an enhancement of $339,432.91 and a total fee request of $1,433,704.71.

### D.   *City of Jersey City's Opposition*

Jersey City concedes that the plaintiffs are prevailing parties and entitled to an award of reasonable attorneys' fees and costs. Defendants' Brief in Opposition to Plaintiffs' Motion for Attorney's Fees and Costs ("Opp. Brf.") at 1. Jersey City also acknowledges that *Rendine v. Pantzer*, 141 N.J. 292 (1995) supplies the applicable standard for assessing the plaintiffs' fee applications. Opp. Brf. at 4.

Jersey City challenges several aspects of the plaintiffs' fee applications.  First, Jersey City contends that the plaintiffs' attorneys have failed to meet their burden of showing that the hourly rates used in the calculation of their respective lodestars are reasonable.  In this regard, Jersey City claims that certifications of other employment counsel do not support the fees sought by the petitioning attorneys because the attorneys whose certifications were offered had more experience than the petitioning attorneys and also because there was no evidence that courts had approved the rates stated in the attorneys' certification.  Notably, Jersey City did not offer any certifications of its own or any other evidence to show that the rates sought by the petitioning attorneys exceed what is commonly commanded in the market; nor did Jersey City proffer an alternative rate or rates that it contends should be used to calculate the petitioning attorneys' respective lodestars.[2]

Jersey City also challenges some of the time entries underlying the petitioning attorneys' lodestar calculations.  The challenged entries can be grouped into the following categories:

1.  Redundant Work Created by Appearance of New Trial Counsel on Eve of Trial.

Jersey City argues that, because Attorney Manshel is an experienced and qualified trial attorney, it was unnecessary for Ms. Montone to retain the Green Savits firm as trial counsel on the eve of trial and therefore that time devoted by Attorney Green "for reviewing deposition transcripts, motion papers, and exhibits and drafting deposition digests" should be removed from the lodestar calculation because Attorney Manshel had already performed those tasks earlier in the litigation.  Jersey City also claims that time spent by Attorney Manshel for "catching up" Attorney Green on the case should also be excluded from the calculation.  Based on this contention, Jersey

---

[2] In fact, in calculating an alternative fee award for each set of plaintiffs' counsel, Jersey City used the same hourly rates used by the petitioning attorneys themselves, not so implicitly conceding the reasonableness of the rates used by the petitioning attorneys.  *See* Opp. Brf. at 58-59.

City claims that $54,181.90 (102.23 hours) should be cut from the Green Savits fee application and that $20,083.83 (40.17 hours) should be cut from Manshel Law's application.

### 2.   Redundant Work Performed by Breuninger & Fellman Associates

Jersey City contends that 7.2 hours of time for worked performed by a Breuninger & Fellman associate should be cut from the firm's lodestar because the same work allegedly had been performed by the another firm associate months earlier.

### 3.   Multiple Attorneys Appearing at Same Event

Jersey City seeks a reduction of the petitioning attorneys' fee applications for time when more than one attorney appears at trial, court conferences, motions, witness preparation sessions, and similar events.  On this basis, Jersey City seeks to reduce the Green Savits lodestar by $13,860 (36 hours) and the Breuninger & Fellman lodestar by $90,423.50 (253.3 hours).

### 4.   Astriab's Counsel's Off-the-Record Attendance at Depositions.

Astriab counsel, Attorney Breuninger, attended and observed, but did not formally appear at, nine depositions in the *Montone* matter.  While Jersey City acknowledges that the depositions were relevant to the claims in *Astriab*, Jersey City contends that Attorney Breuninger could have simply read the transcripts of the depositions rather than traveling to and attending them in person. Jersey City therefore seeks a reduction of $33,862.50 (64.5 hours) from the Breuninger & Fellman lodestar.

### 5.   Time Spent on Unnecessary Depositions

Jersey City contends that three depositions taken across the two litigations were unnecessary and that the petitioning attorneys' lodestars should be reduced by the number of hours devoted to those depositions.

2853384.1 116597-103871

Specifically, Jersey City contends that the depositions of City Council President Mariano Vega and City Councilman Peter Brennan were unnecessary in proving Ms. Montone's retaliation case because the City Council had no role in making promotions within the police department or in appointing the Police Chief. Jersey City therefore contends that Manshel Law's lodestar should be reduced by 10.4 hours ($5,333.34) for time that Attorney Manshel devoted to preparing for and attending those depositions.

Similarly, Jersey City contends that the deposition in the *Astriab* matter of Robert Kakoleski, Jersey City's assistant business administrator, was unnecessary because the same relevant testimony could have been obtained from a witness who also served as an assistant business administrator and was deposed the previous day. Jersey City therefore seeks a reduction of 7.5 hours ($2,887.50) from the Breuninger & Fellman lodestar for time devoted to the preparation for and attendance at that deposition.

6. Basic Legal Research Performed by Senior Attorneys

Jersey City objects to time spent by senior attorneys, specifically attorneys Manshel, Green, and Breuninger, performing "basic legal research" on the ground that the higher rates that they are charging reflect a knowledge of the pertinent area of the law and thus that such "basic" research should not have been necessary. On this basis, Jersey City seeks a reduction of approximately 29.92 hours ($14,275.00) from Manshel Law's lodestar, 5.22 hours ($2,766.60) from the Green Savits lodestar, and .6 hours ($315) from the Breuninger & Fellman lodestar

7. Attorneys Performing Administrative Tasks

Jersey City objects to numerous time entries for tasks that it characterizes as "administrative." Most of the purportedly "administrative" tasks identified by Jersey City are for drafting of cover letters and other simple documents. In addition, Jersey City identified several

10

instances where Attorney Manshel billed time for electronically filing documents with the Court. For these allegedly administrative tasks, Jersey City seeks reductions in the petitioning attorneys' fee applications as follows: Manshel Law -- 36.58 hours ($18,292.30); Green Savits -- .5 hours ($265); and Breuninger & Fellman -- 45.42 hours ($18,971.20).

8. Block Billing

Jersey City objects to the petitioning attorneys' use of block billing and contends that their lodestars should be reduced by the amount of time for block-billed entries. On this basis, Jersey City seeks the following reductions from the petitioning firm's lodestars: Manshel Law -- 34.17 hours ($17,085) and Breuninger & Fellman -- 42.3 hours ($16,320).

9. Excessive Inter- and Intra-Office Communications.

Jersey City contends that the petitioning attorneys engaged in excessive inter- and intra-office communications. On this basis Jersey City seeks the following reductions in the petitioning firm's lodestars: Green Savits – 56.43 hours ($29,907.90) and Breuninger & Fellman – 116.48 hours ($50,160.80).

10. Vague Time Entries

Jersey City contends that several of the petitioning attorneys' time entries are so vague that it is impossible to determine whether the amount of time devoted was reasonable or whether the service was productive or redundant. On this ground, Jersey City asks that several of the entries for Attorneys Green (13.2 hours), Manshel (22.83 hours), Fellman (4 hours), and Ramalho (5 hours) be reduced by a percentage that I find appropriate.

11. Excessive Time on Specific Tasks

Jersey City challenges several hours of Attorney Manshel's time on various tasks, claiming that she spent too much time on these tasks. Specifically, Jersey City contends that the time spent by Attorney Manshel's on the following tasks was excessive and should be reduced:

11

| Task | Hours on task | Fee |
|------|---------------|-----|
| Preparing Ms. Montone for deposition | 23.83 | $11,916.68 |
| Preparing for Third Circuit argument | 35.25 | $17,625.00 |
| Preparing for Appellate Division argument | 42.08 | $21,041.68 |
| Razzoli matter[3] | .58 | $291.68 |
| Total | 101.75 | $50,875.04 |

Jersey City also argues that reductions should be made to reflect the plaintiffs' limited success. Specifically, Jersey City contends that because the plaintiffs did not prevail on their claims against three individual defendants,[4] they should not be compensated for services relating solely to those claims. On this basis, Jersey City seeks a reduction of $1,060 (2 hours) from the Green Savits firm's fee lodestar and $36,065 (80.9 hours) from the Breuninger & Fellman lodestar.

Jersey City also argues that the fee request sought by Ms. Montone's attorneys is disproportionate to the ultimate relief won on behalf of Ms. Montone, noting that Ms. Montone's attorneys collectively seek more than $3.5 million in fees when they won a verdict of just $276,834.00. Recognizing that courts are not supposed to maintain any specific ratio between the fee award and the relief obtained, Jersey City does not propose a specific reduction, but urges that the disproportionality be considered when assessing Ms. Montone's attorneys' fee applications. Jersey City does not contend that the Breuninger & Fellman fee application is disproportionate to the success achieved by that firm.

---

[3] The record indicates that the *Razzoli* matter was another political-retaliation case against Jersey City. Attorney Manshel devoted a *de minimis* amount of time to communicating with counsel in that case, reviewing the pleadings, and preparing an affidavit for Ms. Montone for use in the *Razzoli* matter.

[4] The three individual defendants are Jerramiah Healy, Robert Troy, and Brian O'Reilly. The plaintiffs dismissed their claims against O'Reilly prior to trial. Because the jury's verdict was indecisive as to Healy and Troy, a new trial was granted as to them.

12

Regarding the petitioning attorneys' claims for a contingency enhancement, Jersey City contends that no more than a 35% enhancement is appropriate.  Jersey City thus does not oppose the enhancement sought by Breuninger & Fellman, but seeks to limit the enhancements to the Manshel Law and Green Savits fee applications to just 35% of the pre-verdict lodestar.

Finally, Jersey City challenges petitioning attorneys' requests for reimbursement of expenses largely because some of the descriptions of the expenses were inadequate.  Jersey City also objects to expenses related to services that were not appropriate in the first place, such as second-chair counsel's travel expenses to and from the courthouse.

### ANALYSIS

When considering a fee application, the court typically is obliged to "go line, by line, by line through the billing records supporting the fee request."  *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 713 (3d Cir. 2005).  During oral argument on the fee application, counsel for Jersey City advised the Special Master that such a comprehensive review was not desired in this matter and that the Special Master's review should be limited to the issues raised in Jersey City's opposition.  Thus, this opinion will address only the objections raised in Jersey City's opposition.

The New Jersey Law Against Discrimination, N.J.S.A. 10:5-27.1, the New Jersey Civil Rights Act, N.J.S.A. 10:6-2f, and the federal Civil Rights Act of 1981, 42 U.S.C. §1988(b), each allow the court to award a "reasonable attorney's fee" to the "prevailing party."  Jersey City concedes that all the plaintiffs are "prevailing" parties and that they are entitled to a "reasonable" attorney's fee.  Opp. Brf. at 1.  Thus, the issue for resolution is what amount of fees are reasonable in the complicated circumstances of these matters.

I.      Enhancement

2853384.1 116597-103871

As mentioned above, the three petitioning law firms seek varying enhancements of their pre-verdict lodestars to account for the risk that each of them undertook in prosecuting the claims of their respective clients.  Manshel Law seeks an enhancement of 55% of its pre-verdict lodestar; Green Savits a 50% enhancement; and Breuninger & Fellman a 35% enhancement.  Jersey City contends that the enhancement should be 35% for all firms.

In *Rendine*, the New Jersey Supreme Court, seeking to "sharply discourage[e] collateral litigation of 'reasonable fee' issues," 141 N.J. at 317, established standards for determining appropriate fee awards in fee-shifting cases.  Regarding the degree of enhancement, the *Rendine* Court offered the following, particularly specific and instructive, guidance:  "contingency enhancements in fee-shifting cases ordinarily should range between five and fifty [50%] percent of the lodestar fee with the enhancement in typical contingency cases ranging between twenty and thirty-five percent of the lodestar."  *Id*. at 343.

Manshel Law is thus seeking an enhancement outside the "ordinary" range and well beyond what is "typical."  Manshel Law seeks to justify the extraordinary enhancement by identifying certain heightened risks with Montone's case.  Attorney Manshel contends that "public entities are notoriously difficult opponents in civil rights litigation" because they are not as likely as private litigants to settle.  Declaration of Lisa Manshel in Support of Plaintiff Valerie Montone's Motion for Attorney's Fees, Costs, and Post-Judgment Interest ("Manshel Decl.") at ¶32.  She also contends that "[e]mployment and civil rights cases present a true and serious risk of outright loss and total nonpayment," Manshel Decl. ¶35, and that there was "a likelihood of low damages recovery."  Manshel Decl. ¶44.

None of these supposed enhanced risks justify the extraordinary enhancement sought by Manshel Law.  The fact that Jersey City, as a public entity, was not interested in settling is of no

14

moment; since, as Manshel Law acknowledges in its Reply Brief, the risk that animates and justifies a contingency enhancement is "the risk of losing," not the risk that a plaintiff will be unable to avoid a trial with an early settlement.  The fact that employment and civil rights cases may pose a risk of "outright loss and total nonpayment" is to say nothing beyond what Jersey City has already acknowledged:  that some enhancement to account for that risk is appropriate.  All cases have the risk of "outright loss and total nonpayment."  In fact, *Rendine* was an employment case, and the New Jersey Supreme Court awarded an enhancement of just 33%.  Thus, the suggestion implicit in Manshel Law's argument—that all employment and civil rights cases are entitled to enhancements in the upper range (or beyond) of what is mentioned in *Rendine*— is belied by *Rendine* itself.  Finally, the fact that *Montone*'s ultimate damages are limited is not especially significant since a prevailing party becomes entitled to a reasonable attorney's fees upon prevailing, regardless of the size of the award.

Notwithstanding the foregoing, the extraordinarily complicated pretrial procedural maneuverings in Montone, involving two separate summary judgment motions in two separate trial courts and two separate appeals in two separate appellate courts to reverse them, required Manshel Law to devote an equally extraordinary amount of time to vindicate Ms. Montone's rights.  To invest so much time into a case when a favorable outcome was not guaranteed creates a level of risk that does not exist in the typical case.  And none of the procedural complexity was of Ms. Montone's doing.  Therefore an enhancement of 40%, which is in the upper range sanctioned by *Rendine*, is appropriate for Manshel Law's fee application.

As for the Green Savits firm, it did not appear for Ms. Montone until trial was imminent.  It therefore did not have to invest more than a decade of work into the case, as Manshel Law did.  Consequently, the Green Savits firm did not take on a level risk beyond what is seen in a typical

15

employment/civil rights case. Therefore an enhancement of 35%, which Jersey City acknowledges is appropriate, shall be applied to the Green Savits firm's pre-verdict lodestar.

As already mentioned, Breuninger & Fellman requested a 35% enhancement, which was not opposed by Jersey City. Therefore a 35% enhancement will be applied to the Breuninger & Fellman pre-verdict lodestar.

II.     Reasonable Rates

Under *Rendine*, when calculating an attorney's lodestar, a "reasonable" rate reflecting the "'prevailing market rates in the relevant community'" must be used. 141 N.J. at 337 (quoting *Rode v. Dellaciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990)). While a court is obliged to satisfy itself that the petitioning attorneys' proposed rates are "fair, realistic, and accurate," *Rendine* also instructs courts not to engage in an "unnecessarily complex or protracted" process to determine what is a reasonable rate. *Rendine*, 141 N.J. at 337.

The petitioning parties bear the burden of "'submit[ting] evidence supporting the . . . rates claimed.'" *Seigelstein v. Shrewsbury Motors, Inc.*, __ N.J. Super. __, A-3801-18T2, 2020 WL 4342772 at *6 (App. Div. July 29, 2020) (*quoting Rode*, 892 F.3d at 1183). Once such evidence is submitted by the petitioning attorney, the opposing party must "challenge, by affidavit or brief with sufficient specificity to give fee applicants notice, the reasonableness of the requested fee." *Seigelstein*, 2020 WL 4342772 at *6 (*quoting Rode* 892 F.3d at 1183).

The rates sought for each of the petitioning attorneys, as well as each attorney's experience level, are as follows:

| Attorney | Years' Experience | Proposed Rate |
|----------|-------------------|---------------|
| Manshel | 25 | $500 |
| Green | 34 | $530 |

16

2853384.1 116597-103871

| LoGiudice | 21 | $385 |
| --- | --- | --- |
| Breuninger | 47 | $525 |
| Fellman | 37 | $500 |
| Nugent | 32 | $385 |
| Ramalho | 26 | $385 |
| Chow | 7 | $250 |
| Chow (paralegal services) | n/a | $150 |

To meet their burdens, each of the petitioning attorneys submitted sworn statements from numerous New Jersey attorneys, each with decades of experience, to establish that the petitioning attorneys proposed rates reflect prevailing market rates. In particular, Manshel Law and Green Savits submitted declarations and certifications from six different New Jersey attorneys,[5] and Breuninger & Fellman submitted declarations from four New Jersey attorneys.[6]

Jersey City did not offer any opposing sworn statements from other counsel to show that the rates sought by the petitioning attorneys are unreasonable. Instead, Jersey City argued that the attorneys providing the supporting statements had more experience than the petitioning attorneys. But that is not true in all instances and when it was the case the petitioning attorney's requested rate was generally less than the rate of the more senior attorney. Jersey City also argues that the rates of the petitioning attorneys and those of the supporting attorneys had never been approved by the court. Again, that is not true in all instances, but it is also not especially probative since the

---

[5] *See* Declarations of Patricia A. Barasch, Esq; Thaddeus P. Mikulski, Esq.; Richard J. Murray, Esq.; and Alan H. Schorr, Esq.; and Certifications of Bruce Atkins, Esq. and Christopher Lenzo, Esq.
[6] *See* Declarations of Gary Roth, Esq,; Claudia Reis, Esq.; Alan Schorr, Esq.; and Elizabeth Zuckerman, Esq.

2853384.1 116597-103871

fact that there may not be a recent decision approving an attorney's current rate is not telling of whether the rate reflects the prevailing rate in the relevant market at the time of the petition.

Based on the foregoing, the preponderance of the evidence supports the rates requested by the petitioning attorneys. Those rates are therefore approved.

III.     Reasonable Hours

*Rendine* requires that hours that "'are not reasonably expended,'" because "'they are excessive, redundant, or otherwise unnecessary'" be excluded from the calculation of the lodestar. 141 N.J. at 335 (quoting *Rode*, 892 F.2d at 1183). As mentioned above, Jersey City has identified several categories of time entries that it contends are unreasonable and thus should be excluded entirely or reduced. Each category will be discussed.

1.     Redundant Work Created by Appearance of New Trial Counsel on Eve of Trial.

It is not per se unreasonable to retain two firms to represent a litigant. *Chaaban v. Criscito*, Case No. 08-1567 (SDW), 2013 WL 1737689 at *14 (D.N.J. Apr. 3, 2013) (declining to reject time of second law firm in determining fee award). Moreover, because "'careful preparation often requires collaboration and rehearsal,'" it is often reasonable for different attorneys to engage in "similar tasks." *Planned Parenthood v. Attorney General*, 297 F.3d 253, 272 (3d Cir. 2002) (internal quotations omitted). That said, time of multiple attorneys representing the same litigants that is ultimately "wasteful" should be excluded. *Id*.

Jersey City objects to Attorney Green's time reviewing deposition transcripts and similar documents in preparation for trial. As trial counsel, reviewing those materials was unquestionably necessary and is therefore properly included in the Green Savits lodestar. Jersey City also seeks to exclude Attorney Manshel's time for bringing Attorney Green up to speed, but that work is the

18

typical type of "collaboration" that is required between co-counsel. Therefore no reduction is appropriate because of Attorney Green's late appearance in the case.

2.   Redundant Work Performed by Breuninger & Fellman Associates

Jersey City contends that two Breuninger & Fellman associates, Attorneys Ramalho and Chow, billed for doing the same work, but the time entries do not support that claim. The entries indicate that Attorney Ramalho, who is more senior than Attorney Chow, reviewed and edited work product, a summary of a deposition of witness in *Montone*, created by Attorney Chow and that a year later Attorney Ramalho prepared another summary of the a deposition of the same witness in *Astriab*. The challenged entries are therefore reasonable, and no reduction will be made.

3.   Multiple Attorneys Appearing at Same Event

Jersey City argues that the time for Attorney LoGiudice's attendance at four days of trial should be excluded because she did not directly participate in any of the proceedings on those days. There is nothing unreasonable with having an associate-level attorney assist as a "second chair" at trial. *Lanni v. New Jersey*, 259 F.3d 146, 151 (2001) ("it would not have been unreasonable to expect [trial counsel] to conduct the trial . . .with the help of an associate"). Indeed, it happens regularly. Importantly, Attorney LoGiudice did not attend every day of the trial; instead she attended only when important events were occurring such as jury selection, opening statements, and the examinations of Ms. Montone. Attorney LoGiudice's attendance at trial was therefore reasonable, and her time will not be excluded from her firm's lodestar.

Jersey City also seeks to exclude the time of Attorney Ramalho for attending numerous events throughout the course of the litigation—court conferences, mediations, witness preparations and trial—that were also attended by Attorney Fellman, arguing that Attorney Ramalho's attendance at those events was duplicative and unnecessary. As already mentioned, it is not

19

unreasonable for lead trial counsel to be supported by an associate-level attorney. Moreover, Attorney Fellman explains in her declaration that Attorney Ramalho, who prepared numerous briefs, motions, pre-trial orders, and other documents, developed intimate and deep knowledge of the facts of the case and that her participation at these events was therefore necessary and productive. Attorney Ramalho's attendance at the noted events was therefore reasonable, and none of her time will be excluded.

Finally, Jersey City objects to Attorney Chow's attendance at four days of trial after the close of evidence when the charge conference, summations, and jury deliberations were conducted. The record indicates that Attorney Chow throughout the trial assisted with exhibits and performed other administrative duties, including during the charge conference and summations. He was present during jury deliberations to address any issues that might arise, including preparing portions of trial transcript for the jury's consideration. Importantly, given the nature of the services that Attorney Chow performed during these days of the trial, Breuninger & Fellman are seeking compensation at a paralegal rate of $150 per hour. While the attendance of three attorneys at trial would often be unreasonable, Attorney Chow was essentially performing a paralegal function and his firm is seeking compensation as such. His attendance during the last days of the trial was therefore reasonable.

    4.  Astriab's Counsel's Off-the-Record Attendance at Depositions.

Breuninger & Fellman justify the off-the-record presence of Attorney Breuninger at nine depositions in the *Montone* matter by claiming that her presence was necessary to protect the interests of the firm's clients, *i.e.* the *Astriab* plaintiffs, and that her attendance allowed her to assess the demeanors of the witnesses, which allowed her firm to avoid re-deposing some of the witnesses in the *Astriab* matter.

20

These explanations do not fully justify Attorney Breuninger's attendance at these depositions. Because Attorney Breuninger was not "on the record," it is unclear what she could have done in real time during the depositions to protect her clients' interests. Also, while assessing a witness's demeanor is of course an important and valuable exercise, it was not necessary for Attorney Breuninger to attend a full day of each deposition, some of which lasted nine hours, to make such an assessment. Observing for a portion of the depositions would have sufficed.

Therefore half of Attorney Breuninger's time for attending the *Montone* depositions (<u>32.25 hours</u>) will be excluded from the Breuninger & Fellman lodestar calculation.

5. <u>Time Spent on Unnecessary Depositions</u>

Attorney Manshel has provided a valid justification for deposing City Council President Vega and City Councilman Brennan, namely that many "witnesses attested to material conversations with Vega and Brennan." Thus, it seems to have been a reasonable decision at the time to take the depositions. The fact that the testimony was not used later in the proceedings does not mean that counsel should not be compensated for the time devoted to the depositions. *Blum v. Witco Chem. Corp.*, 829 F.2d 367, 378 (3d Cir. 1987) ("failure to use depositions is insufficient to warrant a fee reduction"). Moreover, Attorney Manshel in fact used the deposition testimony in opposition to summary judgment and on appeal. Thus, there is no reason to reduce Attorney Manshel's time for attending the depositions.

Similarly, there is no basis for excluding the time of Attorney Nugent for deposing Mr. Kakoleski because the same relevant testimony could have been obtained from a witness who was deposed the previous day. It is not reasonable to expect an adverse party to know precisely what information a witness will testify about or will have personal knowledge of; so the fact that another witness was able to testify about the same information is not a valid basis for excluding time from

a lodestar calculation. Indeed, in most litigations there are several witnesses who have personal knowledge of the same events. That does not mean that it is unnecessary or unproductive to depose more than one of them. Indeed, deposing more than one such witnesses may develop inconsistencies in their testimonies which can be used later in the case. Also, Jersey City listed Mr. Kakoleski as a witness in its Pre Trial Order; thus, it cannot complain that the *Astriab* plaintiffs took his deposition.

      6.   <u>Basic Legal Research Performed by Senior Attorneys</u>

      There is nothing inherently unreasonable with a senior attorney performing legal research. Sometimes the need for an immediate answer requires that the senior attorney conduct the research rather than taking the time to delegate the assignment to a more junior attorney, and sometimes, when the research is not particularly complex, it is most efficient for the senior attorney to conduct the research herself. Therefore, the relatively modest amount of research performed by Attorneys Breuninger and Green (.6 and 5.22 hours, respectively) is reasonable.

      Attorney Manshel's 29.92 hours of research requires more consideration. Some of her time entries reflect lengthy research efforts on basic areas of the law. For instance, on November 2, 2010, Attorney Manshel spent 3.5 hours researching "summary judgment, section 1983 cases on qualified immunity, establishing clear case law on the various 1st and 14th [Amendments'] rights asserted by [Plaintiff], and drafting memo to file," and on July 19, 2011 she spent 3.25 hours "collecting and initial broad-based review of Fed. R. Appellate Procedures, Local Rules App. Procedure, Third Circuit website and all forms." Such research is the type that should be delegated to junior attorneys who bill at a lower rate. While Attorney Manshel is a solo practitioner and thus does not have a junior attorney to delegate such tasks to, she should not be compensated at a senior attorney's rate for performing such work. *In re Fine Paper Antitrust Litig.*, 751 F.2d 562, 583 (3d

22

Cir. 1984) ("the court may find that the reasonable rate of compensation differs for different activities") (internal quotations omitted).  The undersigned will therefore apply a rate of $300 to 15 hours of Attorney Manshel's lodestar.

      7.  <u>Attorneys Performing Administrative Tasks</u>

      Much of the time that Jersey City characterizes as "administrative" appears to be more substantial.  Much of the supposedly "administrative" time involved drafting letters to the court and engaging on conferences with court personnel.  It is reasonable for an attorney to engage in such activities.  Also, it is important to note that most such time entries are very short, usually .1 or .2 hours, so the tasks were performed highly efficiently, probably due to the fact that they were being performed by experienced attorneys.  Therefore, with one exception, the so-called "administrative" activities are reasonable and will not be excluded when calculating the petitioning attorneys' lodestars.

      The exception relates to Attorney Manshel's considerable time for e-filing documents.  It appears that Attorney Manshel personally e-filed most if not all of her court submissions. Sometimes it took her several hours to complete the task.  For instance, on December 17, 2010 she billed three hours for "E-Filing (into 12/18)" and on January 20, 2012 she devoted 2.25 hours to "E-Filing and emailing copies to defense counsel, appellate papers."  While it may have been necessary for Attorney Manshel, as a solo practitioner, to perform these tasks, for reasons already discussed in connection with her legal research time, it does not follow that she should be compensated for those services at the rate of a senior attorney.  The record reflects that at least 12 hours of Attorney Manshel's time was devoted to e-filing documents.  When calculating her lodestar, a rate of $150 per hour will be applied for that time.

      8.  <u>Block Billing</u>

23

Jersey City acknowledges that there is nothing inherently wrong with block billing and that it is only a concern when it results in an unacceptable level of vagueness. Opp. Brf. at 29-30. The time entries that Jersey City has identified as improper block billing, however, are generally rather precise and detailed (if lengthy) descriptions of the services performed. Therefore, no reductions will be made for block billing.

9. Excessive Inter- and Intra-office Communications.

As mentioned above, collaboration among counsel representing the same litigants or litigants with similar interests is not unreasonable. Indeed, Jersey City acknowledges as much and argues that communications among attorneys can be excessive only when it is "constant." Opp. Brf. at 34. The attorney conferences identified by Jersey City in its opposition cannot be characterized as "constant." Except when important events were occurring, the conferences ere typically few and far between. And, while some attorneys engaged in a large number of inter-office conferences throughout the course of the litigations, the total number cannot be considered excessive given that the litigation has endured for nearly 15 years.

Jersey City in particular challenges the conferences between Attorneys Green and Manshel, which were in service of Attorney's Green's preparation for trial. For reasons already discussed, such getting-up-to-speed time is not unreasonable. Indeed, as Attorney Green notes in his Declaration, it was more efficient to confer with Attorney Manshel than to read all the pleadings, deposition transcripts, etc. as he prepared for trial. Reply Declaration of Jon W. Green in Further Support of Plaintiff Valerie Montone's Motion for Attorney's Fees and Non-taxed Costs at ¶¶25-28.

No reductions will be made for conferences among plaintiffs' counsel.

10. Vague Time Entries

24

*Rendine* does not require extreme precision when a petitioning attorney describes the activities for which the attorney is seeking compensation: 141 N.J. at 337 ("It is not necessary to know . . . the precise activity to which each hour was devoted") (internal quotations omitted). What is required is "some fairly definite information as to the hours devoted to various general activities, e.g. pretrial discovery, settlement negotiations. . ." *Id*. Virtually all of the time entries that Jersey City contends are too vague provide enough information to ascertain what general litigation-related category of service they fall into. There are a few exceptions, such as, for instance, an entry that reads "review document, fax." But the number of such vague entries and the amount of time they correspond to are *de minimis*. So no reduction will be made for vague time entries.

11. Excessive Time Specific Tasks

Attorney Manshel's nearly 24 hours preparing Ms. Montone for her deposition is not unreasonably excessive. As Jersey City acknowledges the deposition spanned three days and there was nearly a year gap between sessions. Under those circumstances Attorney Manshel's preparation time is not excessive.

Regarding Jersey City's challenge to the number of hours Attorney Manshel devoted to her preparation for the argument before the Third Circuit Court of Appeals (35.25 hours) and the New Jersey Appellate Division (42.1 hours), the Third Circuit has indicated that 24 hours preparing for appellate argument on a "single issue" is reasonable. Reviewing the opinions of the Third Circuit and Appellate Division, it is clear that neither involved simply a "single issue." Thus, while

2853384.1 116597-103871

Attorney Manshel's time preparing for the appeals is considerable, it is not unreasonably excessive. Thus, no reduction will be made to her firm's lodestar calculation.[7]

IV.      Proportionality

Finally, as to the fee application by Montone's attorneys, Jersey City notes the disparity between the judgment obtained in the amount of $276,834 and the fees sought, which collectively exceed $3.6 million. While the disparity is troubling, it is clear that Montone's counsel bears little responsibility for the high fees. As discussed above, because of the dismissal of the federal causes of action and the remanding of the state-law causes of action, summary judgments that were ultimately reversed, Montone's attorneys were required to litigate in two separate courts and successfully prosecute two appeals in two separate courts, all before conducting a jury trial. Given the procedural complexity of the case, running up a large lodestar was unavoidable. To reduce Ms. Montone's attorneys' award under these circumstances would unfairly punish them for having the resolve to appeal their client's cause and ensure justice was done.

IV.      Costs

The undersigned has reviewed the costs for which each set of attorneys is seeking reimbursement. Those costs are properly documented and were reasonable and necessary for the counsel to perform their tasks. The petitioning attorney's application for reimbursement of costs are therefore granted in full.

---

[7] As mentioned above, Jersey City 35 minutes of Attorney Manshel's time in connection with the *Razzoli* matter. There is a sufficient connection between Montone's claims and those in *Razzoli* to justify Attorney Manshel's including a *de minimis* amount of time relating to the Razzoli matter in her lodestar calculation.

26

## CONCLUSION

### Manshel Law

The lodestar calculation of Manshel Law will be adjusted as follows:  a rate of $300/hr will applied to 15 hours of Attorney Manshel's time and a rate of $150/hr will be applied to another 12 hours of her time.  A 40% enhancement will be applied to Manshel Law's pre-verdict lodestar.  This results in a fee award of **$2,726,046.24**, calculated as follows

Reduced pre-verdict lodestar:  $1,764,050

Pre-verdict lodestar with enhancement of 40%:  $2,469,670

Post-verdict lodestar:  $256,376.24

Total enhanced fee award:  $2,726,046.24

Manshel Law's application for costs is approved in its entirety in the amount of **$121,642.94**.

### Green Savits

There are no adjustments to the Green Savits lodestar calculation, but its pre-verdict lodestar will be enhanced by 35%, rather than the 50% enhancement it sought.  This results in a fee award of **$597,855.08**, calculated as follows:

Pre-verdict lodestar:  $346,977.95

Pre-verdict lodestar with enhancement of 35%:  $468,420.23

Post-verdict lodestar:  $129,434.85

Total enhanced fee award:  $597,855.08

Green Savits's application for costs is approved in its entirety in the amount of **$3,134.91**.

2853384.1 116597-103871

**Breuninger & Fellman**

$16,931.25, representing 32.25 hours of Attorney Breuninger's time billed at $525 per hour, will be deducted from Breuninger & Fellman's pre-verdict lodestar, which Breuninger & Fellman represented was $969,808.30. An enhancement of 35% will be applied to its reduced pre-verdict lodestar. This results in a fee award of **$1,410,847.52**, calculated as follows:

Reduced pre-verdict lodestar:  952,877.05

Pre-verdict lodestar with enhancement of 35%:  $1,286,384.02

Post-verdict lodestar:  $124,463.50

Total enhanced fee award:  $1,410,847.52

Breuninger & Fellman's application for cost is approved in its entirety in the amount of **$114,448.41.**

James R. Zazzali
Special Master

Dated:  October 1, 2020

28