UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

VALERIE MONTONE,

        Plaintiff,

v.

CITY OF JERSEY CITY, et al.,

        Defendants.

Civil Action No. 06-280 (SRC/CLW)

**OPINION**

**CHESLER, U.S.D.J.**

This matter comes before the Court on Plaintiff's motion for the supplemental award of attorney's fees, costs, and post-judgment interest against Defendant City of New Jersey ("Jersey City"), pursuant to the New Jersey Law Against Discrimination ("LAD"), N.J.S.A. § 10:5-27.1, the New Jersey Civil Rights Act, N.J.S.A. § 10:6-2f, and Section 1988 of the Civil Rights Act of 1981, 42 U.S.C. § 1988. The motion has been fully briefed, and the Court has reviewed the papers filed by the Parties. It proceeds to rule on the motions without oral argument. See Fed. R. Civ. P. 78(b). For the reasons that follow, Plaintiff's motion will be granted in part.

**I.    FACTUAL BACKGROUND**

In 2006, Plaintiff filed suit against Defendant and certain individuals, alleging, in short, that she was wrongfully denied promotion from sergeant to lieutenant and suffered from retaliation for complaints she made about sexual harassment in the police department and for her political views. Over a decade later, on May 2, 2018, a jury returned a verdict finding that the defendants had failed to promote Plaintiff for unlawful reasons but rejected her claim that she was subjected

to a hostile work environment. The jury awarded economic damages to Plaintiff but did not award any compensation for emotional distress.

On November 15, 2019, Plaintiff filed an application for an award of attorneys' fees and costs. Pursuant to Federal Rule of Civil Procedure 53(a), the Court appointed the Honorable James R. Zazzali, former Chief Justice of the New Jersey Supreme Court, as a Special Master and referred the motion to him for proposed findings of fact and a recommendation as to appropriate fee and cost awards. Special Master Zazzali served his October 1, 2020 report (the "Special Master's Report") on the parties and submitted it to the Court for review. The Special Master's Report was thereafter filed on the docket of the above-captioned actions (ECF 450). The Court ordered that any responses, motions, or objections to the Special Master's Report be filed by December 22, 2020, then extended the deadline to January 5, 2021 at the Parties' request. Plaintiff requested that the Court adopt the Special Master's Report in full without objection from Defendant. On January 12, 2021, the Court adopted the findings of fact and conclusions set forth in the Special Master's Report and granted Plaintiff's request for attorney's fees, costs, and post-judgment interest, consistent with the Special Master's recommendation.

On March 5, 2021, Plaintiff submitted a letter to the Court requesting a briefing schedule to submit a "final supplemental petition" for attorneys' fees and costs incurred from June 16, 2020 to the date of the letter. On March 16, 2021, the Court directed the parties to confer and submit a proposed briefing schedule. Plaintiff filed the instant application on April 5, 2021 (ECF No. 468) seeking $73,026.04 in fees and $661.13 in costs incurred between June 16, 2020 and April 5, 2021. Defendant filed its Brief in Opposition to Plaintiffs' [sic] Motion for an Award of Supplemental Attorneys' Fees, on May 5, 2021 (ECF No. 474) ("Opp."), and Plaintiff filed a letter in reply on

May 24, 2021 (ECF No. 475) ("Reply").[1] In the Reply, Plaintiff included a request for an additional $18,116.76 in attorney's fees and $227.31 in costs not described in the April 5, 2021 application. Because of this, the Court allowed Defendant to submit a sur-reply concerning those new fees and costs, which Defendant did on June 21, 2021 (ECF No. 480). Plaintiff filed a response to the Sur-reply on June 24, 2021 (ECF No. 481).[2]

## II. ARGUMENT

The New Jersey LAD, the New Jersey Civil Rights Act, and the federal Civil Rights Act each allow the court to award a "reasonable attorney's fee" to the "prevailing party." N.J.S.A. §§ 10:5-27.1; 10:6-2f; 42 U.S.C. § 1988. This extends to reasonable "fees and costs incurred in satisfying the judgment." Tanksley v. Cook, 360 N.J. Super. 63, 66 (2003) (granting attorneys' fees and costs to prevailing plaintiff under the New Jersey Consumer Fraud Act where defendant was unresponsive to requests for voluntary satisfaction of the judgment and did so only in the face of the plaintiff obtaining a writ of execution to seize the defendant's assets); see also In re Gourvitz, No. 05-2522, 2006 WL 3313933, at *7 (Bankr. D.N.J. Nov. 14, 2006) (applying Tanksley to LAD claim).

The party seeking attorney fees bears the burden to prove the reasonableness of the fee request. Rode v. Dellarsciprete, 892 F.2d 1177, 1183 (3d Cir.1990). "The Court may not make a finding of reasonableness based on a generalized sense of appropriateness, but must rely on the

---

[1] In support of her application, Plaintiff filed declarations of Lisa Manshel with her April 5 application and May 24 reply ("April 5 Decl." and "Reply Decl.," respectively).

[2] The Court will refer to the November 15, 2019 application and related proceedings as the "Main Fee Petition," ultimately culminating with the January 12, 2021 "Main Fee Award." The Court will refer to the "Supplemental Fee Petition" while discussing the litigation surrounding the instant motion.

3

record." Evans v. Port Auth. of N.Y. and N.J., 273 F.3d 346, 361 (3d Cir. 2001) (quoting Smith v. City of Philadelphia Housing Auth., 107 F.3d 223, 225 (3d Cir. 1997)). While the Court has a "positive and affirmative function" in considering the application for fees, Maldonado v. Houstoun, 256 F.3d 181, 184 (3d Cir. 2001), it may not "reduce counsel fees sua sponte as excessive, redundant, or otherwise unnecessary in the absence of a sufficiently specific objection." United States v. Eleven Vehicles, Their Equip. & Accessories, 200 F.3d 203, 211 (3d Cir. 2000) (internal quotation marks omitted). Once an objection has been lodged, however, "fee requests [must] be subjected to a thorough and searching analysis with a line-by-line examination of the request to ensure that time expended by counsel was reasonable and not duplicative or excessive." Evans, 273 F.3d at 362.

**A. General Challenges to Plaintiff's Request for Fees Incurred in Connection with Fee-Related Litigation**

Certain of the fees which Plaintiff seeks to recover arise from costs incurred from fee-related litigation, including time spent litigating the Main Fee and Supplemental Petitions. Defendant asserts that these attorney fees should categorically be denied or substantially reduced for either of two reasons: (i) on the ground that Plaintiff had "limited success" in her Main Fee Petition; and (ii) on the ground that applications to recover fees incurred in connection with fee-related litigation ("fees-on-fees" litigation) should generally be awarded at half the lodestar.

In arguing that Plaintiff has met with limited success, Defendant cites to Gresko v. Pemberton Twp. Bd. Of Educ., No. 1:19-cv-00638, 2020 WL 6042317 (Oct. 13, 2020 D.N.J.), for the proposition that, in considering Plaintiff's success (or lack thereof), the Court must examine solely whether Plaintiff succeeded in litigating the Main Fee Petition, rather than relying on Plaintiff's success in the underlying litigation. According to Defendant, using this lens Plaintiff

4

was not particularly successful: While Plaintiff sought $5,085,417.52 in fees, she received an award of $4,734,749.56—a reduction of about $350,000. (Opp. at 2.) Defendant claims that this should be considered a particularly limited success given that Defendant challenged "only a portion" of Plaintiff's original ask. (Id.)

By contrast, Plaintiff disagrees that the current determination of "success" must be divorced from that found within the underlying litigation. (Reply at 3.) Instead, Plaintiff claims that the Court is bound by the "law of the case" to find that Plaintiff achieved more than a "limited success" in the underlying litigation. (Reply at 3-4.) In the alternative, Plaintiff argues, she met with "extraordinary success" in the Main Fee Petition. (Reply at 3.)

The Court disagrees with Defendant's reading of Gresko. While the court in Gresko reduced the award with respect to the "fees on fees" litigation, it did not do so on the ground that the petitioner met with "limited success" on its fee application. The fee was instead reduced considering petitioners' "dubious discovery objections," "procedurally improper . . . and unnecessary briefing," discovery errors, and administrative tasks. Gresko, 2020 WL 6042317 at *9-11. Gresko does not compel the conclusion that the Court may only consider Plaintiff's success or lack thereof solely stemming from the Main Fee Petition.

But even if this Court adopts Defendant's position and limits its consideration to Plaintiff's success on the Main Fee Petition—to the exclusion of Plaintiff's plain success in the underlying litigation³—the conclusion remains the same: a reduction on this score is unwarranted. Defendant

---

³ The Court will not relitigate the fact of Plaintiff's success on the merits of the case. Defendant previously argued, unsuccessfully, that the award on the Main Fee Petition should be reduced to reflect Plaintiff's "limited success" on the merits. Montone v. City of Jersey City, No. 2:06-cv-280, 2020 WL 7041570, at *12 (D.N.J. Dec. 1, 2020); see also United Artists Theatre Cir. v. Twp. of Warrington, 316 F.3d 392, 397-98 (3d Cir. 2003) (holding that "[c]ourts apply the law of the case doctrine when their prior

challenged the Main Fee Petition on no less than twelve grounds, the majority of which were denied outright. (See generally Special Master's Report). The Court concludes that, on the whole, Plaintiff was resoundingly successful in the Main Fee Petition.[4] Cf. D'Orazio v. Washington Tp, 501 F.App'x. 185, 188 (3d Cir. 2012) ("District courts have wide discretion to determine whether, and by how much, fees should be reduced for lack of success.").

Defendant also asserts that applications for recovery concerning fees-on-fees litigation generally should be awarded at half the lodestar. (Opp. at 2.) Defendant appears to ground the argument on his assertion that these litigation activities have "nothing to do with 'justice' or vindicating the purposes of the causes of action on which Plaintiffs prevailed at trial." (Opp. at 2-3.)[5]

The Court is not persuaded by Defendant's characterization of the framework under which Plaintiff is entitled to fees. Fee-shifting provisions such as those provided by the relevant statutes serve a number of compelling goals. These arrangements are designed "to attract competent counsel to advance the public interest through private enforcement of statutory rights that the

---

decisions in an ongoing case either expressly resolved an issue or necessarily resolved it by implication").

[4] Notably, even though the award on the Main Fee Petition was roughly $350,000 less than that which Plaintiff's counsel sought, the substantial majority of that reduction is attributable to the reduction of the enhancement to Manshel Law's lodestar. While counsel sought a truly extraordinary 55% enhancement to its pre-verdict lodestar, the application of a 40% enhancement—still at the very upper end of what courts generally allow and greater than the 35% enhancement proposed by Defendant—reduced the recovery by over $265,000.

[5] Plaintiff asserts that Defendant's position on fees-on-fees litigation is barred by the law-of-the-case doctrine because the Main Fee Petition "awarded plaintiff's lodestar for all compensable work, including work on the main fee petition." (Reply at 4.) The law-of-the-case doctrine "relieves a court of the obligation of considering an issue twice," but cannot be used "to prevent a properly raised argument from being considered even once." United Artists Theatre Cir., Inc. v. Twp. of Warrington, PA, 316 F.3d 392, 398 (3d Cir. 2003) (emphasis in original). The Main Fee Award cannot be read so narrowly as to foreclose Defendant's argument here, which has been raised for the first time in response to this supplemental petition for fees.

government alone cannot enforce" and the provisions are important to "vindicating the rights of defrauded consumers, the victims of discrimination, and whistleblowers who suffer retaliation for exposing wrongdoing." Pinto v. Spectrum Chemicals & Lab'y Prod., 200 N.J. 580, 593 (2010). As explained in Tanksley, inhibiting plaintiffs' ability to collect these fees would frustrate these goals:

> The compensatory goals of the civil rights laws would . . . be undermined if fees were not . . . available when defendants oppose the collection of civil rights judgments. An award of compensation for injuries sustained as a result of unconstitutional state action would be "diluted" if fees were denied to plaintiffs required to contest substantial efforts to resist or obstruct the collection of civil rights judgments.

360 N.J. Super. at 66-67 (citing Balark v. Curtin, 655 F.2d 798, 803 (7th Cir.1981)) (internal citations omitted).

Nor does the Court find persuasive the few examples proffered by the Defendant whereby federal courts granted a reduced award for fees-on-fees litigation pursued under the Individuals with Disabilities Education Act ("IDEA").[6] While it may be the practice within the District of the District of Columbia to grant plaintiffs' counsel half of the standard recovery in fees-on-fees litigation for successful IDEA claims, see e.g., Staton v. D.C., 1:13-CV-1966 (GMH), 2015 WL 5728884, at *5 (D.D.C. Sept. 30, 2015), the Court is unaware of a similar practice within New Jersey. Cf. e.g. Council Enterprises, Inc. v. City of Atl. City, 200 N.J. Super. 431, 443 (Law. Div. 1984) (granting full recovery under the federal Civil Rights Act).

---

[6] Defendant misreads Escochea v. Cty. of Los Angeles, which did not, as Defendant claims, authorize fees on fees at one half of the Special Master's recommended rates. No. 216-CV-00271JFWJEMX, 2017 WL 4082291, at *11 (C.D. Cal. Sept. 14, 2017) ("the Special Master will recommend to the Court additional fees for . . . [counsel] at their recommended full hourly rates" for work conducted after the verdict).

For the foregoing reasons, the Court will not categorically deny or reduce Plaintiff's recovery of fees incurred in connection with her efforts to recover the fees rightfully due to her.

**B. Challenges to Specific Entries**

In addition to Defendant's general challenges, Defendant identifies specific time entries to which it objects payment of reimbursement.

    i.    <u>Fees relating to the Main Fee Petition incurred prior to oral argument on the Main Fee Petition</u>

Defendant challenges Plaintiff's application for $7,783.75 in fees billed for activities conducted between June 16, 2020 and August 18, 2020—the dates on which Plaintiff filed her reply brief on the Main Fee Petition and the Special Master heard oral argument on the Main Fee Petition, respectively—on the ground that the claim for these fees should have been presented to the Special Master at the August 2020 hearing. According to Defendant, it is "inequitable to have required Defendants to incur attorney's fees of their own in defense of a second fee application when the Special Master was appointed for that very purpose." (Opp. at 2-3.)[7] In response, Plaintiff justifies the delay in submitting this request for reimbursement on the ground that she "sought to avoid filing piecemeal motions relating to fees out of-respect for the Court and judicial economy." (Reply at 6.)[8]

Defendant cites to no legal authority for its position and instead appeals to the Court's sense of equity. There is no question that the entries in question are typically compensable

---

[7] Defendant also objects to reimbursing these fees on the ground that had nothing to do with "'justice' or vindicating the purposes of the causes of action on which Plaintiffs prevailed at trial." (Opp. at 2-3.) This objection fails for the reasons described <u>supra</u> at I.A.

[8] Plaintiff notes that Defendant does not challenge the propriety of the time expended for these entries, merely the timeliness of Plaintiff's application for reimbursement. (Reply at 5.)

activities. Tanksley, 360 N.J. Super. at 68 ("[T]ime spent preparing counsel's fee petition is compensable."). Furthermore, the Court credits Plaintiff's argument that she sought to proceed in an efficient manner, rather than filing intermittent fee applications with the Court. If anything, Defendant is in a better position to challenge these entries today—with notice and an opportunity for briefing—than it would have been if Plaintiff had submitted its billing entries to the Special Master on the day of the August 2020 hearing, as Defendant appears to advocate. Accordingly, Plaintiff is entitled to these requested fees.

      ii.    <u>Fees relating to the Main Fee Petition incurred after oral argument on the Main Fee Petition</u>

Defendant next challenges Plaintiff's application for $3,416.75 in fees billed for activities conducted after the August 2020 hearing which, as Defendant puts it, concerned "counsel's continued attention to their fee petition." (Opp. at 5-7.) According to Defendant, these fees could not have had "any impact on the fees awarded or on matters of consequence to anyone but the lawyers themselves." (Opp. at 5.) The challenged entries include discussions with Defendant and related communications with Plaintiff, between Plaintiff's counsel, and with the Court, some of which were in relation to Defendant's decision to pursue an appeal of the Main Fee Award. These activities—conducted in furtherance of collecting attorneys' fees pursuant to New Jersey statute—are compensable fee-related litigation activities, notwithstanding Defendant's characterizations. See Tanksley, 360 N.J. Super. at 66-67.

      iii.    <u>Fees incurred in connection with preparing the instant motion</u>

Defendant lodges a challenge to Plaintiff's application for $1,250 in fees billed for activities conducted in connection with the instant motion. (Opp. at 7-8.) Defendant does not

9

proffer any particular basis for this objection and it is not well-founded. See <u>Tanksley</u>, 360 N.J. Super. at 66-67.

    iv.   <u>Fees incurred in connection with collection activities</u>

Defendant opposes Plaintiff's application for $17,841.86 in fees billed for collection activities conducted between February 25, 2021 and April 3, 2021. (Opp. at 8-16.) These activities, according to Defendant, include "considerable amount of time engaged in collection efforts that are controlled by New Jersey state law" and "an overabundance of legal research, consultations with bankruptcy and government affairs attorneys, numerous conferences among Plaintiffs' counsel, and other excessive activities." (Opp. at 8-9.) This work was superfluous, according to Defendant, because Defendant delivered to Plaintiff a letter promising payment of the fees due to counsel in installments. (Opp. at 9.) Under this installment plan, Jersey City would fulfill its obligations as late as January 31, 2023. (<u>Id.</u>) Defendant claims that Plaintiff "did not respond to the February 24 letter" and "reflexive[ly]" launched into an adversarial litigation posture. (<u>Id.</u>) In Defendant's telling, Plaintiff "unilaterally declared an impasse and launched into collection activities," and thus all of counsel's collection-related activity after that date was "unnecessary work" that "could have been averted by communicating with the Defendants' counsel." (Opp. at 8-9.)

In response to Defendant's depiction of Plaintiff's attempts to collect fees that this Court previously awarded to them, Plaintiff sets forth in considerable detail (and with unmistakable indignation) a detailed record of her collection activities. Following the December 1, 2020 issuance of the Special Master's Report, the Parties began discussing payment of the fees and costs, and Defendant proposed an installment plan at that time. (Reply Decl. at 4-5.) Plaintiff

10

"categorically" rejected Defendant's proposed installment plan on December 18, 2021. (Reply Decl. at 6.) On January 12, 2021, the Court adopted the Special Master's Report and entered Judgment on the Main Fee Petition, without objection. In mid-January 2021, Plaintiff's counsel again informed Defendant that none of the various firms representing Plaintiff would accept payout over time. (Reply Decl. at 6.)

On February 11, 2021, Defendant filed a Notice of Appeal in the Third Circuit concerning the award on the Main Fee Petition. The next day, Plaintiff sent Defendant a letter threatening a Rule 11 sanctions motion unless its appeals were dismissed. (Reply Decl. Exs. I, G.) Defendant withdrew its appeals several days later, on February 16, 2021. (Reply Decl. Exs. I, H.) On February 24, 2021, Defendant wrote to Plaintiff's counsel reiterating its request that counsel agree to an installment plan. (Opp., Ex. A.)

Defendant's chief argument, in effect, is that Plaintiff's collection-related activities were not reasonable considering her failure to engage with Defendant's written offer to make payments in installments. The Court disagrees. At the time of Defendant's February 25 letter, Plaintiff had twice rejected Defendant's request that it satisfy its obligations in an installment plan. And while the Court takes no position on the propriety of Defendant's decision to appeal the Main Fee Award, it was not unreasonable for Plaintiff to view it as a tactic designed to "strong-arm" her into acquiescing to Defendant's proposal. Plaintiff was under no obligation to entertain Defendant's plea to delay satisfaction of a judgment that was over a decade in the making, and Defendant could not have been surprised when Plaintiff began collection activities against it.[9]

---

[9] In a related challenge, Defendant contends that Plaintiff's application for fees should be denied because Plaintiff failed to meet and confer to discuss this application prior to submitting it to the Court. (Opp. at 19.) Defendant does not proffer any authority that establishes such a requirement and the Court

Defendant also lodges a halfhearted objection to Plaintiff's request for these fees on the ground that the fees incurred for collection activity "must be pursued in Hudson County." (Opp. at 9-10.) Defendant's conclusory and unsupported assertions are wholly unconvincing. As previously established, Plaintiff's collection work is a compensable activity. See Tanksley, 360 N.J. Super. at 66-67. Plaintiff is a prevailing party based on her merits victory in the district court, and Plaintiff incurred additional fees in her attempts to collect on the judgment awarded by this Court. Defendant fails to explain to the Court why these costs should be distinguishable from any other compensable collection-related fees.[10]

v. Fees incurred for the preparation of Excel spreadsheets

Defendant next challenges Plaintiff's application for $8,500 in fees billed for the preparation of Excel spreadsheets. (Opp. at 17-18.) Defendant points to entries totaling 17 hours that concern spreadsheets for a purpose that is "not evident." Defendant argues that these activities "appear to serve no discernable purpose other than to satisfy the Plaintiffs' desire to tabulate figures for their own purposes." (Opp. at 17.)

In response, Plaintiff subdivides these 17 hours into two groups. First, Plaintiff categorizes those challenged entries created between March 4, 2021 and April 2, 2021, amounting to 6 hours, as time spent preparing the Writ of Execution and drafting and revising an Excel

---

is aware of none. To the extent that Defendant challenges the reasonableness of Plaintiff's decision to file a supplemental fee petition without conferring with Defendant first, it is without merit.

[10] Furthermore, Defendant specifically opposes the reasonableness of four hours expended to draft an information subpoena, which it characterizes as a pro forma document. (Opp. at 9.) The challenged entry, however, is not limited to preparing the subpoena and includes additional activity: "Legal Research and drafting Notice of Information Subpoena, Information Subpoena, service of docketed fee judgment, and letter to Richard Gantner". (April 5 Decl. Ex. A at 13.) The Court finds that four billable hours for these activities is not unreasonable.

spreadsheet "required as an attachment pursuant to Rule 4:59-1." (Reply at 17.) Plaintiff explains that the amount of time was reasonable considering the complexity of the calculations, the involvement of multiple firms, and the revisions necessitated by Defendant's partial payment. (Id.) The Court agrees that Plaintiff's request for these entries is reasonable.

Second, Plaintiff spent 11 hours preparing spreadsheets which detail fees incurred between June 16, 2020 and April 5, 2021, in connection with the instant application. (Reply at 16-17.) Plaintiff asserts that this is reasonable because:

> The preparation of these Excel spreadsheets is extremely time-consuming and detailed, because plaintiffs counsel must ensure that no confidential or sensitive attorney-client privileged, work product, or otherwise deliberative information is filed with the Court, must investigate every entry to clarify any ambiguities and remove any improper entries, and must ensure accuracy in every respect so that counsel can certify to the Court that the entire attachment is truthful.

(Id.) The drafting and review of billing records is an essential, albeit labor-intensive, undertaking required by Local Civil Rule 54.2. Because of the time-consuming nature of this process, the amount of time Plaintiff spent on this task was reasonable.

### vi. Fees incurred in connection with Plaintiff's fee-splitting arrangement

Defendant challenges Plaintiff's application for $125.01 in fees billed in connection with the negotiation amongst the various plaintiff firms of the split of the fee award. (Opp. at 18-19.) According to Defendant, Plaintiff's counsel's "private negotiation is not work anticipated by any legitimate fee-shifting consideration" and "had no beneficial impact on their clients." (Opp. at 18.) Plaintiff's counsel justifies this time spent on their fee split arrangement because it was performed at defense counsel's request and because she "was beginning to suspect that defendant Jersey City was messing around with Plaintiffs." (Reply Decl. at 18.)

13

Defendant should not have to bear the expense of communications between firms concerning their payout, the amount of which had already been determined by the Court. Plaintiff's request for reimbursement of these fees is denied.

**C. Request for Fees Incurred Since This Motion was First Filed.**

In addition to the fees which Plaintiff sought when she first filed the Supplemental Fee Petition, Plaintiff requested in the May 24 Reply reimbursement for an additional $18,116.76 in attorney's fees and $227.31 in costs which she incurred in preparing the Supplemental Fee Petition. Defendant on June 21, 2021 submitted the Sur-reply challenging elements of these additional fees and costs. Plaintiff in turn filed a letter response on June 24, 2021 and consented to removing 50 minutes of billable time from her request in light of the Sur-reply

The Court categorizes into three groups the billable time that remains in dispute from Plaintiff's May 24 request. Except as otherwise noted, Plaintiff is entitled to reimbursement for the requested time and costs.

*Efforts to enforce judgment*. As described, supra, Plaintiff's collection activities—including the issuance and enforcement of the information subpoena—generally are compensable. However, as explained in Plaintiff's June 24, 2021 declaration, Plaintiff's counsel spent a measurable amount of time investigating and subsequently correcting various errors in the filing process. (ECF No. 481-1.) The cost of these errors should not be borne by Defendant. Accordingly, Plaintiff's request for reimbursement of 295 minutes of billable time will be denied. (See Reply Decl., Ex. V., entries dated April 19–21, 23, 26, 28, and 30, 2021 and an entry dated May 3, 2021.)[11]

---

[11] Plaintiff is still entitled to the full 35 minutes of billable time expended on April 30, 2021

*Interfirm communications regarding Plaintiff's counsel's fee arrangement.* As discussed, supra, Defendant shall not be obligated to reimburse Plaintiff for time spent between Plaintiff's counsel concerning their fee-shifting arrangements. Accordingly, the Court disallows reimbursement on 80 minutes of Plaintiff's May 24 request. (See Reply Decl., Ex. V, entries dated April 15 and an entry dated April 16, 2021.)

*Communications and filings with the Court concerning the instant motion.* The lion's share of Plaintiff's reimbursement request stems from time spent communicating with the Court on her supplemental fee application and preparing the May 24 Reply supporting her original request. In total, she spent 19.25 hours preparing her 19-page application and 10-page declaration and marshalling the relevant information and exhibits in support of the fee application. These are compensable costs reasonably expended on the recovery of fees to which Plaintiff is entitled.

### III. CONCLUSION

For the reasons discussed, Plaintiff's motion for the supplemental award of attorney's fees, costs, and post-judgment interest against Jersey City will be granted in part. An appropriate Order will issue.[12]

    s/ Stanley R. Chesler
Stanley R. Chesler
United States District Judge

Dated: July 7, 2021

---

concerning her review of Defendant's request to extend its time to respond to the May 24 Reply and related communications with the Court. (See Reply Decl., Ex. V., certain entries dated May 3, 2021.)

[12] Without prejudice to any lawful application for additional fees and costs incurred while satisfying the judgment, the Court trusts that the Parties will conspire to ensure that this action does not devolve further into the "Kafkaesque judicial nightmare" of an "infinite regression of [fees] litigation." Cinciarelli v. Reagan, 729 F.2d 801, 810 (D.C. Cir. 1984).